IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALBERT DANTZLER,                           )
                      Plaintiff      )
                               )
    vs.                                    )    Civil Action No. 09-275
                               )    Chief Magistrate Judge Amy Reynolds Hay
JEFFREY BEARD, Secretary of                )
Corrections; DORINA VARNER, Chief          )
Grievance Officer; BRIAN COLEMAN,          )
Superintendent at Fayette; JOSEPH          )
KREMPOSKY, Ex Security Captain at          )
Fayette; DANIEL HOOPER, Security           )
Lieutenant at Fayette; ERIC JOHNSON,       )
Security Lieutenant at Fayette; FRANK      )
SALVEY, Grievance Officer at Fayette;      )
SIDNEY CAMPBELL, Property Officer at       )
Fayette; at times mentioned, all defendants)
were acting under the color of State Law,  )
and are being sued in their individual and )
official capacity,                         )
                    Defendants     )

## MEMORANDUM OPINION

Albert Dantzler ("Plaintiff") is a convicted prisoner who was incarcerated at SCI-Fayette at the time of the events giving rise to this civil action.[1]  Plaintiff has filed a civil rights complaint naming eight Defendants, all of whom are employed by the Pennsylvania Department of Corrections ("DOC").  He alleges that they violated his First Amendment right of free speech and Fourteenth Amendment procedural due process rights when the Defendants authorized and/or participated in and/or upheld during the grievance process, the confiscation of Plaintiff's Uniform Commercial Code ("UCC") materials and other legal materials.

Presently before the Court is Defendants' Motion to Dismiss.  Dkt. [17].  Because Plaintiff  had no First Amendment right to possess contraband, i.e., the UCC materials, the First

Amendment claim is properly dismissed.  Because Plaintiff had no property interest in the UCC materials, the procedural due process claim is properly dismissed at least as to the UCC materials.  Alternatively, because he had an adequate post-deprivation remedy in either the DOC administrative remedies or a State law tort action, Plaintiff cannot succeed on a procedural due process claim.[2]

**Standard of Review**

As the United States Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974 (rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).[3]  <u>See also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. _____, 129 S.Ct. 1937 (2009) (clarifying that <u>Twombly</u> standard not limited to antitrust context).  To survive a motion made pursuant to Fed. R. Civ. P. 12(b)(6),  a plaintiff must  "make a 'showing' rather than a blanket assertion of an entitlement to relief."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir.2008).  In other words, he must supply "enough facts to raise a reasonable expectation that discovery" will reveal evidence supporting his claim.  <u>Id.</u> at 232 (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 556 n.3).

The United States Court of Appeals for the Third Circuit has instructed:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 ( 3d Cir. 2009).  Where the court is unable to infer more than a mere possibility of misconduct, the complaint does not "show" that the pleader is entitled to relief.

The court must, as a general rule, accept as true all factual allegations of the complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001).  Nor must the court accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint.  See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp., 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and items appearing in the record of the case when adjudicating a motion to dismiss under Rule 12(b)(6).  Winer Family Trust v. Queen, 503 F.3d 319, 328 -29 (3d Cir. 2007); Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)(in adjudicating motions to dismiss, courts may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case.").  In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004),  held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

3

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the indisputably authentic exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  Or, put another way,  a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In addition, because Plaintiff was, at the time of the filing of this civil action,[4] a prisoner and because he named governmental entities or employees thereof as defendants, the screening provisions of the Prisoner Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915A apply herein.  In addition, because he was a prisoner granted leave to proceed in forma pauperis to prosecute this suit, the screening provisions of 28 U.S.C. § 1915(e) also apply.  Lastly, because he was a prisoner who filed a civil rights action complaining of prison conditions, the screening provisions of 42 U.S.C. § 1997e apply.  The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss.  See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000).  Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA.  See Lopez; Dare v. U.S., CIV.A.06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd, 264 Fed.Appx. 183 (3d Cir. 2008).

4

**Discussion**

Plaintiff's complaint is brought pursuant to Section 1983 of the Civil Rights Act.  In order to

> make out a claim under Section 1983, a plaintiff must demonstrate
> that the conduct of which he is complaining has been committed
> under color of state or territorial law and that it operated to deny
> him a right or rights secured by the Constitution and laws of the
> United States. The plaintiff must also establish that it was the acts
> of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).  Defendants do

not dispute that they act under color of state law.  Hence, the only two remaining inquiries are

whether the complaint states a violation of Plaintiff's rights and whether the Defendants caused

that violation.  We conclude that the complaint fails to state a violation of Plaintiff's rights.

Plaintiff claims that on or about August 6, 2008, Defendants Kremposky, Hooper,

Johnson  and Campbell came to his cell at SCI-Fayette and confiscated all of Plaintiff's

paperwork and books based upon a suspicion that Plaintiff possessed UCC materials.  Plaintiff

claims that these four defendants refused to provide Plaintiff with "proper notice" of the alleged

UCC materials confiscated.  Dkt. [3] at 4, ¶ 2.  He claims such, notwithstanding that Plaintiff

himself provided to the Court in his response a copy of  "Confiscated Items Receipt" which

listed the following items that were confiscated: "one foot locker/paper-work," "two boxes legal

work" and "U.C.C. materials."  Dkt. [22-3] at 2.[5]   Plaintiff does not explain how this

"Confiscated Items Receipt" does not provide "proper notice" to him.  It appears that Plaintiff

complains the receipt is not specific enough.  Plaintiff notes that "[f]rom information and belief,

the UCC material confiscated and alleged to be illegal is a book entitled 'Uniform Commercial

Code Commentary Text' and an envelope of about (20) or more pages of legal and personal

paperwork . . . ." Dkt. 3 at 4, ¶ 3.   Plaintiff alleges that the "UCC material confiscated," id., at ¶

4, which presumably included the envelope of 20 pages or so, was destroyed shortly after being

confiscated notwithstanding the fact that Plaintiff had not exhausted his administrative remedies

to challenge the confiscation and notwithstanding the fact that there is a written policy that such

confiscated materials will not be destroyed prior to a prisoner exhausting such administrative

remedies.

Plaintiff complains that notwithstanding the written procedures, there is another, possibly

unwritten, policy put in place and enforced by Defendants Beard, Varner, Coleman and Salvey,

which has been in effect since July 2005, whereby the Defendants permit confiscation and

destruction of prisoners' property without adequate notice and a meaningful review and prior to

allowing them to exhaust their administrative remedies.  Dkt. [3] at 4, ¶ 5.

Plaintiff also alleges that Defendants Beard, Varner, Coleman and Salvey also authorize

and condone actions taken by Defendants Kremposky, Hooper, Johnson, and Campbell, whereby

these latter four defendants are alleged to have falsified documents to undermine Plaintiff's

claims, not only to deprive him of his property but also in order to deprive him of being justly

compensated for his property.  Dkt. [3] at 4, ¶6.

Plaintiff alleges that the "policy, procedure and practice that are asserted herein . . .

violates [sic] Plaintiff's right to read . . . under the First Amendment, . . . Plaintiff's Due Process

rights under the Fourteenth Amendment . . . and 42 U.S.C.A. [§] 1983 conspiracy along with"

violations of various state laws, rules, or policies.  Dkt. [3] at 4, ¶ 7.  By way of relief Plaintiff

seeks declaratory and injunctive relief as well as compensatory damages.

### 1. **First Amendment Claim**

In their motion to dismiss, Defendants note that the Court of Appeals for the Third

Circuit has addressed DOC's policy of confiscating UCC materials and upheld that policy

against First Amendment challenges.  Dkt. [18] at 4 to 5 (citing Monroe v. Beard, 536 F.3d 198,

207-209 (3d Cir. 2008); Edmonds v. Sobina, 296 Fed.Appx. 214 (3d Cir. 2008)(same)).  The

Defendants point out that in light of Monroe and Edmonds, the complaint fails to state a claim as

a matter of law.  We agree.

In Monroe v. Beard, twelve prisoner-plaintiffs/appellants had their cells searched and

UCC materials as well as other property confiscated in August 2005.  This confiscation was the

result of a policy memorandum issued by DOC management in July 2005, which declared as

"'contraband' all UCC forms, documents relating to UCC filings, materials on 'redemption' and

copyrighting names, and publications regarding the 'redemption or lien filings.' Specifically it

established that the possession and receipt of these publications violated its policy on inmate

mail privilege, DC-ADM 803, which prohibits '[w]ritings that advocate, assist or are evidence of

criminal activity or facilitate misconduct.'"  Monroe v. Beard, 536 F.3d at 204.  That

memorandum also cautioned that such confiscated materials should not be immediately

destroyed until the inmates had an opportunity to exhaust, using their available administrative

remedies.  Id.  The Monroe Court recounted the history that prompted the issuance of this

memorandum.  That history included prisoners filing UCC liens against government officials,

including state and federal judges, prosecutors and DOC employees, and the havoc that such wreaked upon those individuals.

The prisoners in <u>Monroe</u> brought a Section 1983 action, alleging that the confiscation of these UCC materials and the other legal papers violated, inter alia, their First Amendment "right to possess publications and legal materials." <u>Monroe v. Bead</u>, 536 F.3d at 207. The Court reviewed the memorandum-policy authorizing the confiscation of UCC materials and held that the policy satisfied the <u>Turner</u> reasonableness test, finding that the policy was reasonably related to a legitimate penological interest in preventing the potential for abuse by prisoners of filing UCC liens. In the course of doing so, the Court noted that

> we reiterate the unique problem that these fraudulent financing statements pose: Although the perpetrator can file the lien with relative ease, the victim must go through a complicated ordeal, such as to seek judicial action, in order to remove the lien. A court order to expunge the lien does not end the ordeal, as oftentimes the victim must then resolve his credit report, which typically will have been damaged by the time he discovers that the lien was filed. In light of the considerable time and expense imposed by these UCC, redemption, and name "copyrighting" schemes, we agree that requiring the DOC to accommodate plaintiffs right by adopting a "wait and see" approach, rather than by the pre-emptive measures they employed in this case, would impose more than a "de minimis" cost to prison officials.

<u>Monroe v. Beard</u>, 536 F.3d at 209.

Similarly, in <u>Edmonds v. Sobina</u>, a prisoner sued the DOC defendants for searching his cell on December 7, 2005, and confiscating UCC materials. The prisoner claimed, inter alia, that such confiscation violated his First Amendment rights. This confiscation was apparently accomplished not via the DOC-issued July 2005 memorandum at issue in <u>Monroe v. Beard</u>, but

pursuant to DC-ADM 803(VI)(D)(1)(g).  Edmonds v. Sobina, 296 Fed.Appx. at 216 (the

prisoner claimed that "the defendants violated due process by charging him with possession of

contraband pursuant to DOC-ADM 803(VI)(D)(1)(g)").

The Court addressed the prisoner-plaintiff's First Amendment claims in Edmonds v.

Sobina as follows:

> That leaves the First Amendment claim regarding the confiscation
> of UCC-related materials pursuant to DOC-ADM
> 803(VI)(D)(1)(g). Edmonds asserts that the defendants deprived
> him of his First Amendment right to possess legal material. . . . .
> The items confiscated from his cell include the kind of papers and
> documents that are necessary for filing a UCC commercial lien.
>
> The District Court properly concluded that the DOC policy, which
> restricts an inmate's possession of UCC-related materials, does not
> violate Edmonds's First Amendment right to possess legal
> materials. Recently, we had occasion to review the DOC
> memorandum issued in July 2005, the precursor to DOC-ADM
> 803(VI)(D)(1)(g), in *Monroe v. Beard*, 536 F.3d 198 (3d Cir.
> 2008). There, we held that the DOC policy providing for the
> confiscation of UCC-related materials, publications, and
> information on copyrighting names is not constitutionally
> unreasonable under *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254,
> 96 L.Ed.2d 64 (1987). Id. at 207-09. Our holding and rationale in
> *Monroe* apply with equal force to DOC-ADM 803(VI)(D)(1)(g).
> The policy "is reasonably related to the DOC's interest in
> protecting government officials from fraudulent liens." *Id*. at 208.
> The regulation is intended to address the practice among inmates
> in Pennsylvania of filing fraudulent liens against public officials
> (including correctional officers and administrators) pursuant to so-
> called "redemption" and name copyrighting schemes, among
> others. *Id*. at 202 n. 2, 208. Courts have uniformly declared such
> commercial liens brought by inmates against prosecutors, judges,
> correctional officers and other government employees, as null and
> void. *Id*. at 202 n. 2 (citation omitted).
>
> Moreover, DOC-ADM 803(VI)(D)(1)(g) does not impinge on

> Edmonds's right to possess publications and legal materials in
> general; thus, he continues to have an alternate means of
> exercising his First Amendment rights. *Id*. at 208-209. The burden
> on DOC of fighting inmates' false liens is great. As we noted in
> *Monroe*, accommodating the right of inmates to possess UCC-
> related materials without restriction would effectively encourage
> more inmates to file false liens against public officials in order to
> harass and intimidate them, resulting in the needless expenditure of
> public funds to adjudicate the liens in court and have them
> declared null and void. *Id*. at 209. As for alternatives to the
> regulation, Edmonds argues that a court, not the DOC, should
> decide in the first instance whether his UCC-related materials are
> legitimate or not. We disagree. The DOC is not required to use
> "the least restrictive means possible" to further its legitimate
> penological interests, and, thus, the prison need not wait until an
> inmate actually files a false lien claim in court before confiscating
> the inmate's UCC-related material. *Id*.

Edmonds, 296 Fed.Appx. at 217-18 (footnote omitted).   Plaintiff himself seems to contend the

confiscation of his property was pursuant to the very policy at issue in Edmonds, i.e., DC-ADM

803(VI)(D)(1)(g). See, e.g., Dkt. [22] at 5, (referring to "contesting the above acts [i.e., the

confiscation of his UCC materials] and the unidentified DOC policy and procedure that

authorize[s] such." (citing Exhibit 1, which is Dkt. [22-2], which is the DOC-issued Bulletin

that  promulgated DC-ADM 803(VI)(D)(1)(g)).  The Court must note, however, that given

Plaintiff's UCC materials were allegedly confiscated on August 6, 2008, it would appear that

Plaintiff's UCC materials were not confiscated pursuant to DC-ADM 803(VI)(D)(1)(g) but

pursuant to a newly amended policy DC-ADM 803,Sect. 2.A.¶ 9.[6]

Notwithstanding the Defendants' invocation of Monroe and Edmonds, Plaintiff has done

nothing to take himself outside of the rule of those two cases, which found that DOC's

confiscation of UCC materials pursuant to the DOC policies does not violate a prisoner's residual First Amendment rights. See, e.g., Snee v. Barone, __ Fed.Appx. __, 2009 WL 5103553, at *2 (3d Cir. 2009) ("In Monroe, we concluded that a DOC policy permitting confiscation of prisoners' UCC-related materials was not constitutionally unreasonable, particularly in light of 'the DOC's interest in protecting government officials from fraudulent liens.' Monroe, 536 F.3d at 208. Snee has offered nothing to convince us that our holding in Monroe should not apply to his claim.").

The best that Plaintiff can come up with is in his response wherein he argues as follows:

> Plaintiff even states that the cases of: Monroe v. Beard[,] 536 F.3d 198 (3d Cir[.] 2008) and Edmond[s] v. Sobina[,] 296 Fed.Appx. 214 (3d Cir. 2008) cited by the defendants should not be binding to Plaintiff[']s present case.  As Plaintiff argues not the right to possess UCC material as a right which have been prohibited by DOC Policy and Procedure 803, but for the violative acts of his personal printed UCC material being confiscated without a proper notice of what was taken, being denied a fair review to be able to contest the confiscation because such was alleged to be done in accord with an unidentified DOC Policy and Procedure, and the destruction of Plaintiff[']s property before he could exhaust his available administrative remedies in addition to contesting the above acts and the unidentified DOC policy and procedure that authorize such,  (Exhibit #1), which Plaintiff has been subjected to since the year 2005.  (Exhibit # 4).  Plaintiff does not believe such a policy to exist.  (Exhibit # 1).
>
> Plaintiff in addition argues that he was deprived of his property complained of due to a DOC policy (Exhibit # 4) (Exhibit # 5) that is not identified to Plaintiff (Exhibit # 1), which Plaintiff[']s property being confiscated (Exhibit # 3) in accord with DOC policy (Exhibit # 5) which authorizes Plaintiff's property to be taken and destroyed without Plaintiff has [sic] been notified properly or has had a chance to exhaust his available remedies (Exhibit # 4) (Exhibit # 1) [which policy] prevents the Plaintiff from being allowed protection as such has prevented Plaintiff from being allowed to peacefully maintain his First Amendment rights and maintain printed material that is not prohibited for him to possess (Exhibit # 1) as listed in (Exhibit # 2).  Title 37 [Pa.Code]

93.2 and DOC Policy 803.

Dkt. [22] at 4 to 5.  We find Plaintiff's arguments in the first quoted paragraph singularly

unpersuasive as to any alleged First Amendment rights and absolutely failing to allege anything

that would take his case outside of the rule established in Monroe and Edmonds.  All the

arguments made in the first quoted paragraph, in the Court's opinion, address issues of

procedural due process (which we address below) and thereby concede *sub silentio* that Monroe

and Edmonds prove fatal to Plaintiff's First Amendment claim.

  As for the second quoted paragraph, again we fail to see how anything alleged therein

takes Plaintiff's case outside of the rule of Monroe and Edmonds.  He has alleged nothing that

nudges his First Amendment claimed right to possess UCC materials from the possible to the

plausible within the contemplation of Twombly.  His bald assertion that the conceded U.C.C.

materials that were confiscated constitute "printed material that is not prohibited for him to

possess" is simply wrong.  Plaintiff cited in support of his claim Exhibit # 1.  Exhibit # 1 is an

affidavit by Plaintiff.  Although not entirely clear, Plaintiff seems to suggest that "at no time has

Plaintiff been issued a DOC policy or procedure that prohibits **all** UCC material"  Dkt. [22-1] at

4 (emphasis added).  It appears that Plaintiff is arguing that he had a legitimate usage for the

UCC materials, namely, that the UCC Commentary text is "a business book that lists the

business law of the land, which Plaintiff, an entrepreneur minded individual will need to

understand the business law when he is released. . . . such a book did not pose a threat to

security."  Plaintiff's Affidavit, Dkt. [22-1] at 2.  This argument gains him nothing.  First,

contrary to Plaintiff's assertion that such a book did not pose a threat to security, possession of

such is presumed to pose a threat to security under the various DOC policies in effect since July

2005, and from what Plaintiff himself proffered in his response, the DOC authorities determined

that his possession of such material did indeed pose such a threat and rejected any claim of

legitimate use for the materials.  See, e.g., Dkt. [22-6] at 2 ("The record reflects that the only

items that were confiscate and not returned to you were UCC materials that are contraband.").

Secondly, even if he had a legitimate reason for possessing them, i.e., preparation for a post-

incarceration career as an entrepreneur, that DOC denied him possession of the UCC materials

either as a matter of policy or as a matter of discretion under that policy, does not violate his

First Amendment rights as a matter of law.  Plaintiff possessed other means by which to prepare

for his post-incarceration career of business entrepreneur.

Because Plaintiff has alleged to this Court nothing that would take his case outside the

rule of Monroe and Edmonds, his First Amendment claim is properly dismissed for failure to

state a claim upon which relief can be granted.  See, e.g.,  Carter v. Beard, No. 1:CV-08-0605,

2009 WL 613605  (M.D. Pa. March 6, 2009)(relying on Monroe and Edmonds, and  granting

motion to dismiss First Amendment attack on DOC's UCC policy as announced in DC-ADM

803 Section 2(A)(9)).

### 2. Due Process Claim

Next, we take up Plaintiff's procedural due process claims.  Plaintiff claims his property

was taken without procedural due process.  To establish a prima facie case of a procedural due

process violation, a plaintiff must establish[7] (1) the existence of a property interest (2) that the

state deprived the person of and (3) that the deprivation was accomplished without procedural

protections of notice and an opportunity to be heard.  See Rusnak v. Williams, 44 Fed.Appx.

555, 558 (3d Cir. 2002) ("Procedural due process claims, to be valid, must allege state

sponsored-deprivation of a protected interest in life, liberty or property. If such an interest has

been or will be deprived, procedural due process requires that the governmental unit provide the

individual with notice and a reasonable opportunity to be heard.")(citation omitted); Castro

Rivera v. Fagundo, 310 F.Supp.2d at 434 (listing elements of prima facie case).

There is some confusion in this area of the law for prisoners.  The general rule is that

where the property taken from the prisoner is taken in a random and unauthorized way, then, if

there is an adequate post-deprivation remedy, the property is not taken without procedural due

process, i.e., the only process due is that of a post-deprivation remedy.  See, e.g., Parratt v.

Taylor, 451 U.S. 527, 541-43 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S.

327, 330-31 (1986).  While Parratt dealt with negligent deprivations of property, the Supreme

Court later ruled that this reasoning also applied to intentional deprivations of property.  Hudson

v. Palmer, 468 U.S. 517, 533 (1983).  However, the other general rule is that where the property

is taken pursuant to a policy, i.e., is not taken in a random and/or unauthorized way, then as a

general matter, pre-deprivation process is required.  Logan v. Zimmerman Brush Co., 455 U.S.

422, 435-36 (1982).  However, the general rule that where property is taken pursuant to a policy

there must be pre-deprivation process is an overbroad statement.  See, e.g., Reynolds v. Wagner,

936 F.Supp. 1216, 1228 (E.D.Pa. 1996)("Admittedly, there is no pre-deprivation remedy. Such a

remedy, however, is not always necessary every time a loss occurs stemming from an

established governmental policy."), aff'd, 128 F.3d 166 (3d Cir. 1997); Shabazz v. Odum, 591

14

F.Supp. 1513, 1517 (M.D.Pa. 1984) ("Due process, however, does not require a predeprivation hearing every time a loss occurs as a result of an established governmental procedure.").   As explained by the Court in <u>Parratt</u> in discussing prior case law in this area: "[t]hese cases recognize that either the necessity of quick action or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process."  <u>Parratt</u>, 451 U.S. at 539.

Similarly here, we conclude that the State's action in taking Plaintiff's property deemed to be UCC materials[8] and hence, contraband subject to seizure, which, of necessity, occurs prior to any notice to Plaintiff, when coupled with the post-deprivation remedies accorded to Plaintiff via the DOC regulations, satisfies procedural due process even if the deprivation is accomplished via a formal policy, or as Plaintiff suggests, an informal policy.  <u>See</u>, <u>e.g.</u>,  <u>West v. Michigan Dept. of Corrections</u>,  No. 07-11081, 2008 WL 4104497, at *5 (E.D.Mich. Sept. 2, 2008)("the 'Parratt doctrine' prohibits procedural due process claims brought under 42 U.S.C. § 1983 where the state provides the claimant an adequate post-deprivation remedy if (1) the deprivation was unpredictable or 'random'; (2) **predeprivation process was impossible or impracticable**; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property or liberty.")(emphasis added)(citing <u>Copeland v. Machulis</u>, 57 F.3d 476, 479-480 (6th Cir.1995)). Instantly, we conclude that providing notice to specifically targeted prisoners and an opportunity to be heard prior to the confiscation of UCC materials would be impracticable.

Perhaps this is why the Third Circuit Court of Appeals held in <u>Monroe</u>, (without

mentioning the distinction between random and unauthorized deprivations versus deprivations

accomplished via policy), that the post-deprivation remedies afforded by DOC are sufficient to

satisfy procedural due process.   As the Court in <u>Monroe</u> held:

> The plaintiffs argue that prison officials violated their Due Process rights
> by failing to afford them pre-deprivation hearings before confiscating legal and
> other personal materials. Moreover, they maintain that Due Process entitled them
> to notice that the materials at issue had been deemed to be contraband. Finally,
> they challenge the sufficiency of the DOC's post-deprivation procedure on the
> grounds that the defendants have not adhered to their own grievance procedure
> (DC-ADM 804).
>
> Like other constitutional rights, the Due Process rights of prisoners may be
> accommodated to a prison's legitimate security needs. *See Bell v. Wolfish*, 441
> U.S. 520, 558-60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "[A]n unauthorized
> intentional deprivation of property" by prison officials does not violate the Due
> Process Clause "if a meaningful postdeprivation remedy for the loss is available."
> *Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393
> (1984)(*citing Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420
> (1981)). Pre-deprivation notice is not constitutionally required. *See id.*
> **Because prisons are constitutionally required to afford inmates only a post-**
> **deprivation remedy, we agree that the defendants' failure to give the inmates**
> **prior notice of their intended seizure of their materials notice did not violate**
> **the plaintiffs' Due Process rights.** *Id.* We also agree that the DOC furnished the
> plaintiffs with a meaningful post-deprivation remedy. After prison officers raided
> plaintiffs' cells and confiscated their materials, Deputy Superintendent for Internal
> Security Michael Lorenzo distributed a letter to the inmates setting forth the
> DOC's newly developed policy on "publications, UCC filings, the redemption
> process, UCC forms and tax forms used to file fraudulent liens." The letter further
> explained why the inmates' materials were confiscated and assured that non-
> contraband materials would be returned. Additionally, it informed them that the
> DOC's usual grievance procedure was available to them, and it set forth a special
> process for objecting to the seizures, explaining that an "Unacceptable
> Correspondence Form," or "Confiscated Items Report" should be used to file
> objections to the search and to give a legitimate reason for possessing the
> contraband items.

<u>Monroe</u>, 563 F.3d at 209-210 (emphasis added).  <u>See also</u>  <u>Barr v. Knauer</u>, 321 Fed.Appx 101

(3d Cir. 2009) (finding no procedural due process violation where an electric razor was

confiscated from a prisoner pursuant to a policy because there was an adequate post-deprivation remedy in the form of the DOC grievance procedure). Hence, <u>Monroe</u> clearly supports the holding here that because of adequate post-deprivation remedies, Plaintiff cannot successfully state a procedural due process claim notwithstanding his claim that the deprivation was accomplished via a policy.

While Plaintiff argues about the inadequacies of the DOC administrative remedies and that these remedies were not complied with, even if we accept these allegations as true, such would not be sufficient for Plaintiff to succeed on his procedural due process claim. This is so because not only has the DOC grievance system and other internal procedures, such as the Unacceptable Correspondence Form process, been held to afford adequate post-deprivation process, but courts have found that a tort action in the state courts of Pennsylvania also provides adequate post-deprivation remedies. Plaintiff has failed to make any arguments concerning the fact that Pennsylvania affords him such alternative adequate post-deprivation remedy. What the court held in <u>Morales</u> applies with equal force here:

> Plaintiff argues that the DOC grievance system is an inadequate post deprivation remedy because DOC officials, who responded to his grievance, allegedly failed to compare Plaintiff's purported signature on the form authorizing the deduction from his account, with Plaintiff's "true" signature, as Plaintiff has requested that they do. Dkt. [16] at 2. There are at least two problems with this argument. First, "[t]he fact that [t]he prisoner was not successful in his grievance pursuit does not undermine the procedure's adequacy as a post-deprivation remedy." *Woods v. Abrams*, No.Civ.A. 06-757, 2007 WL 2852525, at *19 (W.D.Pa. Sept.27, 2007); *accord Austin v. Lehman*, 893 F.Supp. 448, 454 n. 4 (E.D.Pa.1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").

17

> Second, even if it were otherwise, Plaintiff had available to him, as
> the Report noted, the post deprivation remedy of a state law tort
> action for conversion of property. He failed to make any argument
> about that remedy in his objections. Plaintiff had at least one
> adequate post deprivation remedy in the form of a state law tort
> suit.

Morales v. Beard, No. 09-162, 2009 WL 2413425, at *2 (W.D.Pa. July 31, 2009),

*reconsideration denied by*, 2009 WL 3270922 (W.D.Pa. Oct. 9, 2009) .   Hence, given that he

had available to him at least one adequate post-deprivation remedy, about which he makes no

arguments, Plaintiff's procedural due process claim fails as a matter of law.

In the alternative, we find that the Defendants' confiscation of Plaintiff's UCC materials

did not violate his procedural due process rights because, as a matter of law, Plaintiff has no

property rights in UCC materials.  This is so because the DOC has, in effect, defined UCC

materials to  presumptively constitute contraband, at least since the July 2005 memorandum.[9]

See, e.g., Steffey v. Orman,  461 F.3d 1218, 1221 (10th Cir. 2006)("A due process claim under

the Fourteenth Amendment can only be maintained where there exists a constitutionally

cognizable liberty or property interest with which the state has interfered. . . .  The requirement

in *Gillihan* of a predeprivation hearing is relevant only if an inmate first demonstrates that he has

a protected property interest, id. at 938, and here we conclude that Mr. Steffey had no property

right protected by the Fourteenth Amendment to receive a contraband money order while in

prison.");  Lyon v. Farrier, 730 F.2d 525, 527 (8th Cir. 1984) (per curiam) ("Because the property

was contraband, [the inmate] cannot seriously argue that he had a protected property interest in

it.");  Barker v. Sheldon, NO. 209-CV-701, 2010 WL 672767, at *4 (M.D.Fla. Feb. 23,

2010)("To have a property interest. Plaintiff must demonstrate 'more than an abstract need or

desire for it .... He must, instead, have a legitimate claim of entitlement to it' under state or

federal law. Here, Plaintiff fails to specify what property the FCCC officials did not permit him

to keep. To the extent that FCCC officials deemed the property contraband, Plaintiff had no

property interest in any item that was classified as contraband.")(citation omitted);  Weems v. St.

Lawrence, NO. CV409-065, 2009 WL 2422795, at *4, n.6 (S.D.Ga. Aug. 6, 2009)("Generally,

inmates have no property interest in any item that is classified as contraband.");  Williams v.

Ries, NO. CIV. 06-CV-11312, 2008 WL 4403823, at *1 (E.D.Mich. Sept.  26, 2008) ("an inmate

does not have a protected property interest in possessing contraband");  Arteaga v. Alameida,

NO. CIVS031004, 2008 WL 364785, at *10  (E.D.Cal. Feb. 8, 2008) ("An inmate does not have

a property interest in possessing contraband.").  See also Cooper v. City of Greenwood, 904 F.2d

302, 305 (5th Cir. 1990) ("[c]ourts will not entertain a claim contesting the confiscation of

contraband per se because one cannot have a property right in that which is not subject to legal

possession.").

In the alternative, even if we assumed for the sake of argument that the rule were

otherwise and a prisoner would be entitled to procedural due process for the taking of

contraband,  given the abundant caselaw just cited for the proposition that a prisoner is not

entitled to due process protections for contraband, Defendants would all be entitled to qualified

immunity as to the procedural due process claims since it would not have been clear to a

reasonable official in the Defendants's shoes that what they considered contraband was required

to have been the subject of procedural due process under pain of committing a Constitutional

tort.  In like manner, given the case law of <u>Monroe</u> (decided on July 29, 2008 and Plaintiff's property was seized on August 6, 2008) and other cases which preceded the Court of Appeals' decision in <u>Monroe</u>, including the <u>Monroe</u> decisions by the District Court, it would not have been clear to a reasonable officer in the position of the Defendants that their actions violated Plaintiff's constitutional rights.[10]

### 3.  **Conspiracy Claim**

Plaintiff also makes a conclusory claim of conspiracy.  Dkt. [3] at 4, ¶ 7.   However, because we have already determined that the Plaintiff has failed to establish the violation of any of his federal rights, he cannot, *a fortiori*, establish a civil conspiracy under Section 1983 because such requires the commission of an underlying federal civil rights violation, which Plaintiff has failed to establish.  <u>In re Orthopedic Bone Screw Products Liability Litigation</u>, 193 F.3d 781, 789 (3d Cir. 1999)("The established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.  Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort.  Conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort.")(internal citations and quotations omitted); <u>Halberstam v. Welch</u>, 705 F.2d

472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy [i.e., the agreement] is not independently actionable").

In the alternative, the Defendants point out that a conclusory allegation of conspiracy fails to state a claim upon which relief can be granted. We agree.   See e.g.,  Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'").  The requirement that conspiracy allegations not be conclusory is met "where the complaint sets forth a valid legal theory and it adequately states the conduct, time, place, and persons responsible." Adams v. Teamsters Local 115, 214 Fed.Appx. 167, 175 (3d Cir. 2007).  Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in Leatherman .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule.").   Indeed, what the court in Adams, said of the conspiracy allegations therein, applies equally herein, i.e., the conspiracy "allegation[s] do[] not provide any facts regarding the time, place, or conduct of the alleged conspiracy" and the allegations constitute "a conclusory statement that is insufficient to meet the [Plaintiff's] burden to state a claim for relief." Adams, 214 Fed.Appx.at 176.  Hence, the

conspiracy allegation must be dismissed for failing to state a claim upon which relief can be granted.

### 4.  <u>State Law Claims</u>

Lastly, it appears that Plaintiff makes some state law claims.  <u>See</u>, <u>e.g.</u>, Dkt. [3] at 4, ¶ 7 (citing 37 Pa.Code 93.2; 71 P.S. § 186).  To the extent that Plaintiff is attempting to invoke this Court's supplemental jurisdiction over state law claims, the Court declines to exercise supplemental jurisdiction over such claims given that all federal law claims are being dismissed. <u>Boneburger v. Plymouth Township</u>, 132 F.3d 20, 23 n.1 (3d Cir. 1997)("where federal claims are dismissed before trial, the district court 'must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.'") (quoting <u>Borough of West Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)). <u>See</u> also 28 U.S.C. § 1367(c)(3) which permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim ... if [it] has dismissed all claims over which it has original jurisdiction...."  Here, the appropriate considerations do not provide an affirmative justification for retaining supplemental jurisdiction and deciding matters of state law.

Accordingly, because the complaint fails to state a claim upon which relief can be granted, and in light of the Plaintiff's response to the Motion to Dismiss, as well as considering the governing law, the complaint is properly dismissed with prejudice because the Court concludes that any attempted amendment would be futile.[11]

An appropriate Order follows.

_/s/ Amy Reynolds Hay_
Chief United States Magistrate Judge

Dated: 15 March, 2010


cc:     Albert Dantzler
        DZ-4398
        SCI at Greene
        175 Progress Drive
        Waynesburg, PA 15370

        All counsel of record via CM-ECF

23

[1]  During the pendency of this suit, Plaintiff was transferred from SCI-Fayette to
SCI-Greene.  Dkt. [6].

[2]  All parties have consented to have a Magistrate Judge exercise plenary jurisdiction, including the
entering of final judgment.  Dkt. Nos. [20] & [23].

[3]  In light of Twombly's rejection of "no set of facts" standard, we reject Plaintiff's invocation of that
standard in his response.  Dkt. [22] at 2 to 3.

[4]   See, e.g., In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997)("If a litigant is a prisoner on the day
he files a civil action, the PLRA applies.");  Colby v. Sarpy County, No. 4:01CV3130, 2006 WL
519396, at *1 (D. Neb. March 1, 2006)("The status of the plaintiff at the time the lawsuit is initiated,
i.e., whether the plaintiff is incarcerated when the complaint is filed, determines whether the PLRA
applies to a case.").

[5]  We may consider this "Confiscated Items Receipt" and other documents offered by Plaintiff in his
response in opposition to the motion to dismiss because Plaintiff himself provided them to the Court
and thereby vouches for their authenticity and they constitute "items appearing in the record of the
case" within the contemplation of Oshiver.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d
1380, 1385 n.2 (3d Cir. 1994)  (in adjudicating motions to dismiss, courts may "consider matters of
public record, orders, exhibits attached to the complaint and items appearing in the record of the
case.")(emphasis added). See also Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (courts may
consider on a motion to dismiss "documents whose comments are alleged in a complaint and **whose
authenticity no party questions**, but which are not physically attached to the pleading")(emphasis
added), overruled on other grounds by;  Galbraith v. County of Santa Clara, 307 F.3d 1119 (9th Cir.
2002); Cherry v. D.B. Zwirn Special Opportunities Fund, L.P., No. 8:09-cv-33,  2010 WL 415313, at
*6 n.6 (M.D.Fla.  Jan. 27, 2010) ("Because Plaintiffs referenced the appointment of receivers in their
Amended Complaint, attached a copy of the order to their response, and do not dispute the contents or
authenticity of the order . . . the court may properly consider the state order when ruling on
Defendants' motions to dismiss")(emphasis added).

[6]  That newly amended policy provided as follows:

> When any documentation concerning Uniform Commercial Code
> (UCC) filings, the redemptive process, "Acceptance for Value"
> presentments or documents indicating copyright or attempted
> copyright of a name is received, mailroom staff shall notify the local
> Intelligence Captain/Security Lieutenant. An Unacceptable
> Correspondence/UCC Related Materials Form (Attachment 2-B)
> shall be completed and sent to the inmate. The inmate shall have 10
> days from the date of the notice to provide in writing to the local
> Intelligence Captain/Security Lieutenant an explanation of the legal
> basis or purpose for his/her possession of UCC related material. In
> the alternative, the inmate may choose to file a grievance under the

> DC-ADM 804, explaining the legal basis or purpose for his/her
> possession of UCC related material. Any and all documents or
> materials referenced in this paragraph shall be confiscated and
> considered contraband whether processed through the mailroom or
> found anywhere else within the facility.

The Court takes judicial notice of this policy which was issued April 8, 2008 and effective, April 28 2008 which is available at the DOC website:

> http://www.portal.state.pa.us/portal/server.pt/community/department_of_corrections/4604/doc _policies/612830

(Site last visited 3/8/2010). Although we believe that this was the effective policy on the date of Plaintiff's UCC materials being confiscated, i.e., on August 6, 2008, we need not resolve this question because as one Court has explained, in addressing this newer policy effective April 28, 2008: "*Monroe* and *Edmonds* examined a prior form of DOC-ADM 803. However, the prior versions of the regulation are the functional equivalent to current DOC-ADM 803." Carter v. Beard, No. 1:CV-08-0605, 2009 WL 613605, at *1 n. 3 (M.D. Pa. March 6, 2009)(upholding this newer version of the policy as against First Amendment attack to possess legal materials and dismissing the complaint for failure to state a claim upon which relief can be granted).

[7]  It is clear that Plaintiff has the burden.  See, e.g., Smith v. City of Unadilla, 510 F.Supp.2d 1335, 1346 (M.D. Ga. 2007)("A plaintiff who asserts that a procedural due process violation has occurred, bears the initial burden of establishing that a protected property interest exists."); Castro Rivera v. Fagundo, 310 F.Supp.2d 428, 434 (D.Puerto Rico 2004)("It is not sufficient that a deprivation has occurred. Plaintiffs carry the burden of pointing to the lack of constitutionally sound proceedings at the state level. *Rumford*, 970 F.2d at 999. Plaintiffs must present evidence that the state does not have available review mechanisms comporting with minimum due process requirements."), *aff'd*. 129 Fed.Appx. 632 (1st Cir. 2005).

[8]  To the extent that non-UCC materials were also taken from Plaintiff, we do not find that there was any procedural due process violation given the existence of adequate post-deprivation remedies in the form of either DOC administrative remedies (e.g., both the grievance process and the Unacceptable Correspondence process) or a tort action for conversion in the State Courts.  Insofar as any potential First Amendment claim for any non-UCC materials, the complaint is utterly devoid of any allegations that could be said to state a claim under the First Amendment as to these unidentified non-UCC related materials.  We further note that Plaintiff himself provided a grievance response that shows most of the non-UCC items were returned to him.  Dkt. [22-6].  Furthermore, we do not read the First Amendment's limited guarantees afforded prisoners to prohibit the prison officials from confiscating all papers located within the cell of a prisoner, taking them out of the cell, sorting through them in some other place in order to determine which, if any, constitute UCC related materials or other contraband, and then returning that property which is found not to be contraband.  The temporary dispossession of these non-UCC items and other non-contraband items simply does not offend the

First Amendment because their confiscation is self evidently and indisputably related to a legitimate penological interest, i.e., the potential confiscation of contraband.  See Monroe, 536 F.3d at 207-10 (upholding as against First Amendment attack the confiscation of all "of their [i.e., the prisoner-plaintiffs] publications and legal materials" including "all of the plaintiffs' contraband and non-contraband legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes." Id., at 206).  Plaintiff apparently makes no allegation in his complaint concerning non-UCC materials and any First Amendment infringement.  Plaintiff's complaint only complains of the confiscation and apparent subsequent destruction of his UCC related materials. Dkt. [3] at 4, ¶3 ("From information and belief, the UCC material confiscated and alleged to be illegal is a book titled 'Uniform Commercial Code Commentary Text' and an envelope of about (20) or more pages of legal and personal paperwork. . . .").  Accordingly, the complaint fails to state a claim upon which relief can be granted as to any non-UCC materials under either the First Amendment or the Fourteenth Amendment's procedural due process guaranty.

[9]  Plaintiff contends that not all UCC materials are contraband.  Plaintiff is simply wrong.  The DOC has defined all UCC materials as presumptively contraband since the issuance of the July 2005 memo.  By presumptively contraband, we mean that UCC materials constituted, in the eyes of DOC, contraband unless and until the prisoner could prove that there was a legitimate reason for possessing such.  See, e.g., Monroe v. Beard, NO. CIV.A. 05-04937, 2007 WL 764086, at *1 (E.D.Pa. March 7, 2007), aff'd, 536 F.3d 198 (3d Cir. 2008), wherein the court, construed the July 2005 memo and found that

> [o]n August 10, 2005, plaintiffs received a memorandum from Deputy Superintendent Lorenzo that stated that the reason for the search and seizure was to retrieve documents associated with the Uniform Commercial Code. Defs' Am. Mot. Dismiss p. 4. The memo stated that the Internal Security Department believed that some inmates, including the plaintiffs, were using the UCC to file fraudulent liens against Department of Corrections staff. Id. Therefore, the prison had confiscated publications and forms used to prepare and file fraudulent liens **because these materials were contraband**. Id. The memorandum instructed inmates that "[a]ll property pertaining to this investigation will remain in the custody of the Internal Security Department pending review and disposition of the investigation. In the interim if any legal documents that were unwittingly confiscated and are not related to the UCC investigation will be returned to you." Inmates could object to the search and seizure by using the provided form and the Department's Chief Counsel would review the objections. Id.")

(emphasis added). See also McNeil-El v. Digulielmo, NO. CIV.A. 06-0577, 2007 WL 1575006, at *8 (E.D.Pa. May 31, 2007)(construing same July 2005 memorandum, and quoting from notice sent by DOC to inmate, indicating that "Your correspondence WAS CONFISCATED for the following reason(s): IT CONTAINED UCC RELATED MATERIAL WHICH IS CONSIDERED CONTRABAND."); Monroe v. Beard, No. CIV.A. 05-04937, 2007 WL 2359833, at *3 n.4 (E.D.Pa.

Aug. 16, 2007), aff'd, 536 F.3d 198 (3d Cir. 2008) (construing DC-ADM 803 amendment addressing UCC materials, which was promulgated August 30, 2005 and effective September 6, 2005 which the Court described as follows: "The DOC did not specifically prohibit UCC materials prior to the August 2005 search. An August 30, 2005 amendment to DC-ADM 803, effective September 6, 2005, authorized DOC employees to confiscate UCC filing documents material from inmates. The inmate would then have ten days to advise the prison of the legal basis and purpose of his or her possession of the material Moyer and Deputy Superintendent Lorenzo decided not to issue misconduct charges to any plaintiffs who possessed contraband UCC materials during the August 4, 2005 search because inmates had not been specifically informed that the material was **contraband**.")(emphasis added); DC-ADM 803 Section 2(A)(9) (issued April 18, 2008 and effective April 28, 2008, and which provides in relevant part that "Any and all documents or materials referenced in this paragraph [which includes "any documentation concerning Uniform Commercial Code filings"] shall be confiscated and considered contraband. . . .").

[10]  Plaintiff also sought injunctive relief.   Of course, qualified immunity does not protect against injunctive relief, but only compensatory damages.  Morse v. Frederick, 551 U.S. 393, 432 (2007)(Breyer, J., concurring)("A 'qualified immunity' defense applies in respect to damages actions, but not to injunctive relief.").   Defendants argue that because Plaintiff has been transferred out of the SCI-Fayette, his claims for injunctive relief are moot.  Plaintiff responds that the DOC's UCC policies, whether the official ones or the allegedly unofficial ones which he contends are being enforced, are DOC wide and hence, his claims for injunctive relief against those policies are not moot. We agree in part with Plaintiff and in part with the Defendants.  Because Plaintiff has been transferred out of SCI-Fayette, he is no longer subject to the control of those DOC Defendants who are employed at SCI-Fayette, i.e., Defendants Coleman, Kremposky, Hooper, Salvey and Campbell.  Thus, because they are entitled to qualified immunity as to all damage claims and because Plaintiff is no longer subject to their control, his injunctive relief claims against them are moot.   Marrie v. Nickels, 70 F.Supp.2d 1252, 1259 (D.Kan. 1999) ("Generally, an inmate's transfer to another prison or release moots his request for declaratory or injunctive relief.") (collecting cases).  Hence, qualified immunity would require that the case be dismissed against them *in toto* and that they be dismissed as party defendants.  However, because Defendants Beard and Varner have positions of state-wide authority in the DOC and thus Plaintiff's transfer to another prison within the DOC does not take him outside of their control, the claims for injunctive relief against them would not be moot.  Thus, **if** qualified immunity were the only ground upon which to base this dismissal, the injunctive relief claims against Beard and Varner would not be defeated by the qualified immunity defense.  However, qualified immunity is not the only proper basis upon which to dismiss this suit.

[11]  To the extent that the Defendants did not raise any of the grounds upon which this Court relies to dismiss the complaint, the Court may dismiss on such grounds sua sponte pursuant to the screening provisions of the PLRA.